UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD JERRELL INMAN,<br><br>    Plaintiff,<br><br>    v.<br><br>DARRIN BRIGHT, et al.,<br><br>    Defendants. | Case No. 15-cv-01767-SI<br><br>**ORDER OF DISMISSAL**<br>Re: Dkt. Nos. 10 and 13 |

Ronald Jerrell Inman filed this *pro se* civil rights action under 42 U.S.C. § 1983 to complain about conditions of confinement at the Correctional Training Facility in Soledad ("CTF-Soledad"). Defendants have moved to dismiss the action because, among other things, the action is barred by the doctrines of res judicata and collateral estoppel. Inman has opposed the motion. For the reasons discussed below, defendants' motion will be granted and the action will be dismissed. Inman's later-filed motion for summary judgment will be denied because he is not entitled to judgment in his favor in an action that is barred by the doctrine of res judicata.

## BACKGROUND

I.     <u>Allegations In Amended Complaint</u>

In his amended complaint, Inman alleged that he has an allergy to "fresh and freshly cooked onions," and "when he in[g]ests onions, his gastrointestinal system reacts adversely." Docket No. 5 at 3. He alleged that the California Department of Corrections and Rehabilitation ("CDCR") has been aware of his allergy to onions since his incarceration started in 2002. *Id.* at 3, 5. Inman further alleged that he "first requested an onion-free diet from CTF staff in 2012;" when his request was denied, he filed unsuccessful inmate appeals and then filed state habeas petitions.

1   *Id.* at 5.  He further alleged that he only wanted to obtain a special diet, as is provided to other
2   inmates with other food allergies.  *Id.*  Due to CTF-Soledad officials' refusal to provide him with
3   an onion-free diet, his family members allegedly spent about $400 per year sending quarterly
4   packages to supplement his diet.  *Id.*  Defendants Dr. Bright, Dr. Adams and L. D. Zamora
5   allegedly are responsible for his predicament because they denied his inmate appeals.  *See* Docket
6   No. 5 at 5, Docket No. 5-1 at 17-18 (second level appeal response signed by Dr. Bright and Dr.
7   Adams); Docket No. 5-1 at 19-20 (director's level appeal response signed by L. Zamora).

8   The court liberally construed the amended complaint and determined that it stated
9   cognizable claims for an Eighth Amendment violation and for a violation of Inman's right to equal
10  protection.  Docket No. 6.

12  II.   Allegations In State Court Habeas Petition
13  Before filing this action, Inman filed an action in the Monterey County Superior Court also
14  complaining about prison officials' refusal to provide him an onion-free diet.  *See Inman v. People*
15  *of the State of California C.D.C.R.*, Monterey County Superior Court Case No. HC8040.[1]  Inman
16  commenced that action by filing a petition for writ of habeas corpus in the superior court on
17  July 1, 2013.  Docket No. 11-1 at 2.  In his habeas petition, Inman alleged that prison officials
18  were denying him "a wholesome and nutritionally balanced diet resulting in a deliberate
19  indifference to a serious medical need and an Eighth Amendment violation."  Docket No. 11-1 at
20  4; *see also id.* at 5 ("denying Petitioner a meal without onions due to an allergic reaction is cruel
21  and unusual punishment").  Inman alleged that he "is allergic to onions and if he eats them, his
22  gastro-intestinal system shuts down."  *Id.*  "Upon arriving at C.T.F., Soledad, in January 2012,
23  Petitioner requested a diet without onions due to so many of the meals being prepared with them
24  as it's documented in Exhibit A.  However, a diet without onions was not provided."  *Id.* (error in

---

[1] The court takes judicial notice of the submitted records from *Inman v. People of the State of California C.D.C.R.*, Monterey County Superior Court Case No. HC8040.  *See* Fed. R. Evid. 201(b). A district court "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." *Bias v. Moynihan*, 508 F.3d 1212, 1225 (9th Cir. 2007) (internal quotation marks and citations omitted).

source). He pointed out that other inmates with food allergies, such as allergies to peanuts or fish, received special diets. *Id.* Inman noted that his inmate appeals were denied at all three levels. *Id.* at 4-5. Inman alleged that he was instructed "not to eat the meals that contain onions but not provided substitute meals the way inmates who are allergic to peanuts, fish or otherwise. Currently, Petitioner relies on quarterly packages from his family to supplement the nourishment and caloric intake he is being deprived of by CDCR staff." *Id.* at 5. Inman requested that "a writ of habeas corpus be issued ordering C.D.C.R. to provide an onion free diet due to [Inman's] allergy which is no more than what they are allready doing for inmates with other food allergies." *Id.* at 5 (errors in source).

The Monterey County Superior Court asked respondent to file an informal response, and the parties thoroughly briefed the claims in Inman's petition. On September 26, 2013, the Receiver of the California Correctional Health Care System ("CCHCS") filed an informal response at the court's direction.[2] *See* Docket No. 11-2; Docket No. 11-9 at 2. Many additional briefs were filed in the superior court action over the next several months: Inman filed a reply and an addendum to his reply; the court then requested a supplemental response from the Receiver; the Receiver filed a supplemental response; Inman filed a reply to the Receiver's supplemental informal response; the Receiver filed a second supplemental informal response; and Inman filed another reply. *See* Docket No. 11-9 at 2.

After receiving and considering the parties' filings, the superior court found that Inman had failed to establish a prima facie case for relief on his claim of deliberate indifference to his medical needs. Docket No. 11-9 at 2-3 (citing *Estelle v. Gamble*, 429 U.S. 97 (1976); *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); and *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004)). The superior court explained that Inman had failed to show that officials acted with deliberate indifference to a health risk of which they knew and, even if he had an onion allergy, he had not

---

[2]The Receiver's letter brief explained that the court-appointed Receiver was the appropriate respondent vis-à-vis medical care issues. *See* Docket No. 11-2 at 3 ("The Receiver's federal court-appointed authority is limited to the oversight and delivery of inmate medical care (See, generally, *Plata v. Brown*, U.S. Dist. Ct., N. Dist. CA., No. C01-1351 TEH; Order Appointing Receiver, dated February 14, 2006.)"). A separate response also may have been filed by the CDCR, but it is not in the record before this court.

established the objective prong of an Eighth Amendment claim because he had failed to show there was an excessive risk to his health.

> Petitioner argues that CTF is "ignoring a documented health risk" by failing to provide him an onion free diet. (Supp. Reply at 2.) Yet there is no documentation that petitioner suffers from an onion allergy. Respondent states that CTF has not performed an allergy test because petitioner has never reported any physiological discomfort related to his diet. Petitioner states he has never reported any side-effects because he avoids eating dishes that contain onions. The court recognizes the present conundrum. Regardless, there is still no medical evidence demonstrating the existence of an onion allergy. Petitioner may consider requesting an allergy test and then seek administrative relief if the request is denied. Whether or not CTF must test petitioner for an onion allergy is a different issue from whether CTF must provide him an onion free diet based on the evidence before the court.
>
> Assuming arguendo that petitioner suffers from a food allergy, he has failed to show that CTF is acting in a conscious disregard of an excessive risk to his health. Though the court is sensitive to the discomfort that petitioner may experience if he were to eat the dishes containing onions, there is no evidence demonstrating he is placed in an excessive health risk by eating only the onion-free meals available to him. For example, there is no indication that he is suffering from an unhealthy weight loss, is malnourished, or does not have any food to eat. As previously discussed, the prison menu contains an extra 300 to 400 calories per day more than required for the average person. These additional calories are intended to accommodate personal preference and food sensitivities without compromising a person's health. Petitioner states that his family purchases additional food items to compensate for the dishes he does not eat. However, he has still failed to show that he would be at an excessive health risk without the prison meals containing onions and the supplements from his family.

Docket No. 11-9 at 3.

Inman then filed a petition for writ of habeas corpus in the California Court of Appeal, which was denied on June 20, 2014. Docket No. 1-4 at 13. Inman also filed a petition for writ of habeas corpus in the California Supreme Court, which was denied on September 10, 2014. *Id.* at 14. A few months later, he filed this action.

### LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits a defendant to move to dismiss on the ground that there is a "failure to state a claim upon which relief may be granted." A motion to dismiss should be granted if plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (abrogating *Conley v. Gibson*, 355 U.S. 41 (1957)). The court "must accept as true all of the factual

1 allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and must
2 construe *pro se* pleadings liberally, *Hebbe v. Pliler*, 627 F.3d 338, 341–42 (9th Cir. 2010). The
3 court need not accept as true allegations that are legal conclusions, unwarranted deductions of fact
4 or unreasonable inferences. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988, *amended,*
5 275 F.3d 1187 (9th Cir. 2001). In considering a motion to dismiss, the court may take judicial
6 notice of matters of public record outside the pleadings. *See MGIC Indemn. Corp. v. Weisman*,
7 803 F.2d 500, 504 (9th Cir. 1986).

8 Although res judicata and collateral estoppel are affirmative defenses, a Rule 12(b)(6)
9 motion is an appropriate motion in which to raise these defenses when the defenses raise no
10 disputed issues of fact. *See Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984).

## DISCUSSION

The related doctrines of res judicata and collateral estoppel limit the ability of litigants to relitigate matters. Under the doctrine of res judicata (also known as the claim preclusion doctrine), "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action. . . . Under collateral estoppel [also known as the issue preclusion doctrine], once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Allen v. McCurry*, 449 U.S. 90, 94 (1980). Res judicata bars not only every claim that was raised in state court but also bars the assertion of every legal theory or ground for recovery that might have been raised in support of the granting of the desired relief. A plaintiff cannot avoid the bar of claim preclusion merely by alleging conduct by the defendant not alleged in the prior action, or by pleading a new legal theory. *See McClain v. Apodaca*, 793 F.2d 1031, 1034 (9th Cir. 1986); *see, e.g., Stewart v. U.S. Bancorp*, 297 F.3d 953, 957–58 (9th Cir. 2002) (ERISA claim was barred where plaintiff's prior action had been dismissed because his state law claim was preempted by ERISA and he had failed to amend the prior complaint to state a valid ERISA claim); *Smith v. City of Chicago*, 820 F.2d 916, 920 (7th Cir. 1987) (claim preclusion applied where single core of operative facts formed

basis of both lawsuits and plaintiff neglected to raise § 1983 claim until years after it occurred and not until adverse judgment was rendered on cause of action for employment discrimination); *Fleming v. Travenol Laboratories, Inc.*, 707 F.2d 829, 834 (5th Cir. 1983) (claim preclusion applied where factual basis for Title VII claim was same as factual basis for § 1983 claim raised earlier; even though legal theory was different, same wrong was sought to be vindicated in each instance and plaintiff could have amended prior action to include Title VII claim).

The Federal Full Faith and Credit Statute, 28 U.S.C. § 1738, requires that a federal court give to a state court judgment the same preclusive effect as would be given that judgment under the law of the state in which the judgment was rendered. *See Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984).

In California, a final judgment in state court "'precludes further proceedings if they are based on the same cause of action.'" *Brodheim v. Cry*, 584 F.3d 1262, 1268 (9th Cir. 2009) (quoting *Maldonado v. Harris*, 370 F.3d 945, 951 (9th Cir. 2004)). Under California's "primary rights theory," a "cause of action is (1) a primary right possessed by the plaintiff, (2) a corresponding primary duty devolving upon the defendant, and (3) a harm done by the defendant which consists in a breach of such primary right and duty.'" *Brodheim*, 584 F.3d at 1268 (citation omitted). If this cause of action test is satisfied, then the same primary right is at stake, even if in the later suit the plaintiff pleads different theories of recovery, seeks different forms of relief, and/or adds new facts supporting recovery. *Id.*; *see also Gonzales v. California Dept. of Corr.*, 739 F.3d 1226, 1232 (9th Cir. 2014) ("California's doctrine of claim preclusion does not require identity of relief sought"). "[R]easoned denials of California habeas petitions" have claim-preclusive effect. *Gonzales*, 739 F.3d at 1231. Such denials also have issue-preclusive effects. "[B]ecause of the nature of a state habeas proceeding, a decision actually rendered should preclude an identical issue from being relitigated in a subsequent § 1983 action if the state habeas court afforded a full and fair opportunity for the issue to be heard and determined under federal standards." *Silverton v. Dept. of the Treasury*, 644 F.2d 1341, 1347 (9th Cir. 1981).

Here, the judgment is final. Under California law, a judgment becomes final for res judicata purposes once it is free from direct attack, e.g., when direct review concludes or the time

to appeal lapses. *See generally Busick v. Workmen's Comp. Appeals Board*, 7 Cal. 3d 967, 974 (Cal. 1972). Inman alleges that he presented habeas petitions to the Monterey County Superior Court, the California Court of Appeal, and the California Supreme Court "with a final denial date of September 10, 2014." Docket No. 8 at 5. The state court decision has become final, and Inman does not argue otherwise.

Defendants in this federal action are in privity with the respondent in the state habeas action. Privity exists when a person is so identified in interest with another that he represents the same legal right. *See Trujillo v. County of Santa Clara,* 775 F.2d 1359, 1367 (9th Cir. 1985). The focus of the inquiry is whether the party in the later action was "'sufficiently close'" to the party in the first action so as to justify application of preclusion principles. *See id.* (citation omitted) (finding former county employee's interests to be in privity with Fair Employment and Housing Commission where Commission authorized to proceed against county on former employee's behalf). For example, privity exists between officers of the same government so that a judgment in a suit between a party and a representative of the government is res judicata in relitigation of the same issue between that party and another officer of the government. *See Church of New Song v. Establishment of Religion on Taxpayers' Money*, 620 F.2d 648, 654 (7th Cir. 1980) (citation omitted) (prison employees at federal prison in Texas in privity with prison employees at federal prison in Illinois as both suits against employees of Federal Bureau of Prisons); *see generally Sunshine Anthracite Coal Co. v. Adkins*, 310 U.S. 381, 402-03 (1940) ("There is privity between officers of the same government so that a judgment in a suit between a party and a representative of the United States is res judicata in relitigation of the same issue between that party and another officer of the government.") Inman's state habeas petition named the People of the State of California and the CDCR as the respondents. The CDCR employs the doctors who work at CDCR prisons, such as CTF-Soledad. The defendants in this action are CDCR doctors being sued for acts or omissions done by them in their roles as CDCR doctors at CTF-Soledad. The CDCR's interest is sufficiently aligned with the interests of the doctors in this action that they are in privity with each other for purposes of res judicata. Inman does not argue that privity does not exist.

The same cause of action was pursued in state court as in federal court. The primary right

7

possessed by Inman was his Eighth Amendment right to be free from cruel and unusual punishment -- a right which, in this context, is expressed as a right to have defendants not be deliberately indifferent to his serious medical needs. The primary duty of prison officials was not to inflict cruel and unusual punishment -- a right which, in this context, is expressed as a duty not to be deliberately indifferent to an inmate's serious medical needs. *Cf. Gonzales*, 739 F.3d at 1233 (where plaintiff complaining about improper placement in the SHU due to gang validation urged that the primary duty "was not to place him in the SHU without affording him established procedural protections," the CDC urged that the primary duty was "to provide due process before deciding whether to segregate him," and the state court understood it as a federal due process claim, "[t]he more precise description of CDC's primary duty . . . was not to deprive [plaintiff] of liberty without due process of law"). The alleged harm was Inman's consumption of onion-containing food to which he was allergic. The same primary right of Inman, corresponding primary duty of prison officials, and harm done by prison officials was alleged in both actions. The two actions involve the same cause of action, even though the form of the action in state court (i.e., a habeas petition) led plaintiff to identify as the adverse party his custodian rather than the individual wrongdoers.

The equal protection claim by Inman also is precluded by the doctrine of res judicata because it is based on the same primary right. He alleges that the same actions by prison officials in denying him an onion-free diet to address his onion allergy also resulted in him being treated differently from other inmates who receive diets that take into account their food allergies. *See generally id.* at 1233-34 (retaliation, First Amendment and Equal Protection claims were precluded because they challenged the same decision to place plaintiff in the SHU at the same time as his previously-adjudicated due process claim).

The doctrine of res judicata does not apply "when the party against whom the earlier decision is asserted did not have a 'full and fair opportunity' to litigate the claim or issue. . . . 'Redetermination of issues is warranted if there is reason to doubt the quality, extensiveness, or fairness of procedures followed in prior litigation.'" *Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 480–81 & n.22 (1982) (citations omitted). In enacting § 1738 (i.e., the Federal Full Faith and

1    Credit Statute), Congress intended that federal courts give preclusive effect to state court
2    judgments whenever the courts of the State from which the judgment came would do so—
3    accepting the rules chosen by the State from which the judgment came rather than employing their
4    own rules of res judicata. "The State must, however, satisfy the applicable requirements of the
5    Due Process Clause.  A State may not grant preclusive effect in its own courts to a constitutionally
6    infirm judgment, and other state and federal courts are not required to accord full faith and credit
7    to such a judgment." *Kremer*, 456 U.S. at 482 (footnote omitted).  Where the federal court is
8    considering the preclusive effect of a state court judgment under § 1738, "state proceedings need
9    do no more than satisfy the minimum procedural requirements of the Fourteenth Amendment's
10   Due Process Clause in order to qualify for the full faith and credit guaranteed by federal law."
11   *Kremer*, 456 U.S. at 481.

12   Inman had an opportunity for full and fair litigation of his claims that his Eighth
13   Amendment right not to be subjected to cruel and unusual punishment was violated by prison
14   officials' refusal to provide him a diet required to address his alleged onion allergy. After he filed
15   the habeas petition in the Monterey County Superior Court, an informal response and reply were
16   filed, followed by a court request for a supplemental response; followed by two more responsive
17   briefs from the Receiver and two more replies from Inman.  The matter was briefed and evidence
18   was submitted.  The Monterey County Superior Court reviewed the submitted materials and issued
19   a reasoned decision denying the petition.

20   Inman's cause of action for an Eighth Amendment violation based on the defendants'
21   failure to provide him a diet free of onions already has been litigated fully.  The fact that the
22   earlier litigation was a state habeas proceeding does not exempt the case from the principles of res
23   judicata or collateral estoppel.  *See Gonzales*, 739 F.3d at 1231; *Silverton*, 644 F.2d at 1347.
24   Rather, the focus is whether Inman had a full and fair opportunity for the issue to be heard and
25   litigated under federal standards, *see id*.  He did.  Inman cited the Eighth Amendment and at least
26   one federal case (*Estelle v. Gamble*, 429 U.S. 97, 104 (1976)) in his state petition. The Monterey
27   County Superior Court cited federal cases regarding Eighth Amendment requirements and
28   determined that Inman's claim failed on both the objective and subjective prongs.

9

The main difference between the state habeas proceeding and the present civil rights action is that damages are available in the civil rights action. However, the unavailability of damages in the state habeas proceeding does not exempt that case from the reach of res judicata. *See City of Los Angeles v. Superior Court*, 85 Cal. App. 3d 143, 151 (Cal. Ct. App.1978) (litigant "cannot avoid impact of rule against splitting causes of action by choosing for his first foray a tribunal of limited jurisdiction.") "[A]ll claims based on the same cause of action must be decided in a single suit; if not brought initially, they may not be raised at a later date. . . . A predictable doctrine of res judicata benefits both the parties and the courts because it 'seeks to curtail multiple litigation causing vexation and expense to the parties and wasted effort and expense in judicial administration.'" *Mycogen Corp. v. Monsanto Co.*, 28 Cal.4th 888, 897 (Cal. 2002) (citations omitted). Under California law, Inman could not pursue an action for damages in California even if he had received a favorable adjudication in the habeas action. *See id.* at 904 (plaintiff who prevailed in action for declaratory relief and specific performance of a contract could not pursue damages in a subsequent action for breach of the same contract); *accord Hatch v. Bank of America N.T. & S.A.*, 182 Cal. App. 2d 206, 210–11 (Cal. Ct. App. 1960) (prevailing plaintiff in quiet title action who received judgment determining his claim was superior and that he was entitled to immediate judgment was barred by res judicata from pursuing second action for damages sustained during time he was deprived of use of property).

Inman offers four reasons for why res judicata does not bar his action. First, he contends that the motion should be dismissed because the defendants listed the wrong lead defendant. Docket No. 13 at 1. Defendants listed M. E. Spearman as the lead defendant in the caption of their motion to dismiss. *See* Docket No. 10 at 1. Spearman was the first listed defendant in the original complaint, but was dropped from the list of defendants in the amended complaint. Inman does not show that his ability to oppose the motion to dismiss was affected in any way by the listing of Spearman as the lead defendant. The error in the caption, if there was one, was inconsequential.

Second, Inman contends that he did not litigate in state court the "issue of reimbursement for supplementing food due to the inability to eat" the food served at CTF-Soledad. Docket No. 13 at 1-2 and 5-6. This does not enable him to avoid dismissal because "California's doctrine of

claim preclusion does not require identity in relief sought." *Gonzales,* 739 F.3d at 1232.

Third, he contends that a habeas petition "is not necessarily a civil lawsuit and cannot be deemed a prior lawsuit." Docket No. 13 at 2. Inman offers no legal support for this argument. Habeas proceedings under state law are broader in scope than federal habeas proceedings under 28 U.S.C. § 2254, and may be used to challenge the conditions of confinement.[3] In any event, the Ninth Circuit already has determined that the adjudication of a California habeas petition may be entitled to preclusive effect under the doctrines of both res judicata and collateral estoppel. *See* ); *Gonzales*, 739 F.3d at 1231; *Silverton*, 644 F.2d 1346-47.

Fourth, Inman argues that his state court habeas proceedings were not fair because the CDCR put into evidence a psychiatric report that was "intended to belittle Inman with a fictitious psychiatric report." Docket No. 13 at 6. The fairness of the state habeas proceedings was not called into question by the presentation of this evidence favorable to respondent's position that Inman did not actually have an onion allergy. The psychiatric report presented in the state habeas proceedings discussed Inman's alleged onion allergy issues on at least two pages, *see* Docket No. 1-5 at 7-8, and supported respondent's argument that Inman's alleged onion allergy may have been related to his psychiatric status, *id.* at 2. Inman had the ability to, and did, oppose that evidence in the state habeas proceedings. *See* Docket No. 11-8 at 3.

Res judicata bars Inman from relitigating the Eighth Amendment claim because the same cause of action is being pursued, Inman is the same party as in the earlier case, and the

---

[3] A person "unlawfully imprisoned or restrained of his liberty" may to prosecute a writ of habeas corpus "to inquire into the cause of such imprisonment or restraint" under California Penal Code § 1473(a). The California Supreme Court explained that " 'a person may be said to be unlawfully 'restrained of his liberty,' so as to be entitled to the writ of habeas corpus, when, though [lawfully] in custody, he is deprived of some right to which, even in his confinement, he is lawfully entitled under the constitution or laws of this state or the United States, the deprivation whereof serves to make his imprisonment more onerous than the law allows, or curtails, to a greater extent than the law permits even in his confinement, his freedom to go when and where he likes.'" *In re Jesse L. Ferguson*, 55 Cal.2d 663, 669 (1961) (citation omitted; italics in source). "It thus appears that a writ of habeas corpus may be sought to inquire into alleged illegal restraints upon a prisoner's activities which are not related to the validity of the judgment or judgments of incarceration, but which relate 'solely to a matter of prison administration.'" *Id.* The remedies available in a state habeas action may not be as expansive as in a § 1983 action, but the remedy does not affect the scope of the rights that can be enforced in such an action.

adjudication of the petition was final and on the merits. Further, res judicata bars not only the Eighth Amendment claim that was litigated, but also bars the new equal protection claim that is based on the same cause of action. The action will be dismissed. The court does not reach defendants' additional arguments for dismissal -- i.e., that they are entitled to qualified immunity and that Inman has requested improper relief -- because the doctrine of res judicata bars this action.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is GRANTED. Docket No. 10. This action is dismissed because it is barred by the doctrine of res judicata.

In light of the dismissal of this action as barred by the doctrine of res judicata, there is no possibility that Inman could prevail on his motion for summary judgment. His motion for summary judgment therefore is DENIED. Docket No. 13.

The clerk shall close the file.

**IT IS SO ORDERED**.

Dated: April 12, 2016

_____
SUSAN ILLSTON
United States District Judge